# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KHALIL HAMMOND, DAVID THOMPSON, ANTOINE WALKER, MUWSA GREEN, TYRONE LEONARD, and MALIKA HENDERSON, on their own behalf and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>   v.<br><br>PENNSYLVANIA DEPARTMENT OF CORRECTIONS; LAUREL HARRY, Secretary of Corrections; GEORGE M. LITTLE, former Secretary of Corrections; MICHAEL WENEROWICZ, Executive Deputy Secretary for Institutional Operations, Pennsylvania Department of Corrections; LUCAS MALISHCHAK, Deputy Secretary for Office of Reentry, Pennsylvania Department of Corrections; BRIAN SCHNEIDER, Director of Psychology, Pennsylvania Department of Corrections,<br><br>               Defendants. | No. 1:25-cv-48 |
| MALIKA HENDERSON, KHALIL HAMMOND, DAVID THOMPSON, ANTOINE WALKER, MUWSA GREEN, and TYRONE LEONARD, on their own behalf and on behalf of all others similarly situated,<br><br>               Plaintiff, | No. 1:25-cv-49 |

|  |  |
|---|---|
| v.<br><br>LAUREL HARRY, Secretary of Corrections; GEORGE M. LITTLE, former Secretary of Corrections; MICHAEL WENEROWICZ, Executive Deputy Secretary for Institutional Operations, Pennsylvania Department of Corrections; LUCAS MALISHCHAK, Deputy Secretary for Office of Reentry, Pennsylvania Department of Corrections; BRIAN SCHNEIDER, Director of Psychology, Pennsylvania Department of Corrections,<br><br>                Defendants.<br><br>ANTOINE WALKER and KHALIL HAMMOND, on their own behalf and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>LAUREL HARRY, Secretary of Corrections, and MICHAEL WENEROWICZ, Executive Deputy Secretary for Institutional Operations, Pennsylvania Department of Corrections,<br><br>                Defendants. | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>No. 1:25-cv-50 |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' BRIEFS ON CONSOLIDATION

## INTRODUCTION

Plaintiffs respectfully submit this response to Defendants' briefs[1] opposing consolidation. For the reasons given in Plaintiffs' initial brief, and the additional reasons provided here, the *Hammond*, *Henderson*, and *Walker* matters should be consolidated.

Defendants' various arguments all boil down to a single unavailing point—that consolidation would be "ineffectual" because of the different claims and putative classes among the three cases. But Defendants fail to convincingly explain how the differences among the three cases would cause delay, expense, confusion, or prejudice if the cases are consolidated. *See In re Injectafer Prods. Liab. Litig.*, Nos. 19-276, 19-984, 2021 U.S. Dist. LEXIS 138685, at *2 (E.D. Pa. July 26, 2021). Nor do they explain how keeping the cases separate would yield any judicial-economy benefits. *See id.* Since "[t]he purpose of consolidation is to streamline and economize pretrial proceedings so as to avoid duplication of effort," and consolidation here would do just that, these cases should be consolidated for

---

[1] Defendants' choice to file three separate briefs is itself a compelling argument for consolidation. The three briefs are substantively nearly identical and merely contain minor differences in wording and organization. Rather than fully coordinate their efforts on behalf of their mutual clients and file a single identical brief in all three actions, Defendants' counsel have needlessly burdened Plaintiffs' counsel and the Court by compelling them to comb through three very similar briefs to look for differences. In the interest of efficiency—and because Defendants' three briefs make the same legal arguments—Plaintiffs refer in this response brief solely to the brief Defendants filed in the *Hammond* matter (No. 25-48, ECF No. 60).

discovery and other pretrial purposes. *In re TMI Litig.*, 193 F.3d 613, 724 (3d Cir. 1999) (cleaned up).

Defendants' arguments to the contrary are unavailing. They overstate the significance of the three cases having different legal claims and proposed classes and misunderstand the claims' legal and factual underpinnings. The authorities they attempt to rely on actually undercut their argument and provide further support for consolidation of these matters. Finally, Defendants' last-ditch attempt to kick the can down the road by urging the Court to postpone consolidation falls flat. Consolidation would yield immediate benefits in efficiency for the parties and the Court.

## ARGUMENT

**A.  The inclusion of different claims and proposed classes in the three cases is not a reason to deny consolidation.**

That the three cases include different legal claims does not militate against consolidation. This is especially so because the claims have substantial factual overlap. *See* Pls.' Br. 6–8, No. 25-48, ECF No. 61. Defendants' argument to the contrary ignores the reality that a single case often includes multiple causes of action. Indeed, plaintiffs bring different legal claims arising out of the same or similar facts in a single case all the time. *See, e.g.*, Fed. R. Civ. P. 8(d)(2)–(3) (permitting a party "to state as many separate claims . . . as it has" and permitting pleading in the alternative); Fed. R. Civ. P. 20(a) (permitting joinder of plaintiffs and defendants in

4

a single action). Sometimes this is even required to avoid the possibility of claim preclusion. *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014) (explaining that "the central purpose" of claim preclusion is "to require a plaintiff to present all claims arising out of the same occurrence in a single suit" in order to "avoid piecemeal litigation and conserve judicial resources" (cleaned up)). Plaintiffs are even permitted to bring factually unrelated claims in the same complaint, so long as they are asserted against the same defendant. *See* Fed. R. Civ. P. 18(a).

Nor does the inclusion of multiple putative classes that seek relief on different claims weigh against consolidation. This too is something that routinely occurs within a single case. *See, e.g.*, *Scanlan v. Am. Airlines Grp., Inc.*, 102 F.4th 164, 167, 168 & n.3 (3d Cir. 2024) (noting that the district court had certified a class and a separate subclass for each of three claims); *Sullivan-Blake v. FedEx Ground Package Sys.*, No. 18-1698, 2021 U.S. Dist. LEXIS 151672, at *2, 29 (W.D. Pa. Aug. 12, 2021) (granting plaintiffs leave to amend FLSA complaint to assert state-law class action claims under the laws of fourteen different states despite "the Court acknowledg[ing] that this case will become larger and more complex as a result of amendment"); *id.* at *24–26 (collecting similarly complex cases); *see also* Fed. R. Civ. P. 23(c)(4) advisory committee's notes to 1966 amendment ("Two or more classes may be represented in a single action.").

Defendants in civil cases thus respond to complaints with multiple claims all the time, without issue. They are free to assert different defenses against different claims, seek dismissal of some claims but not others, and seek dismissal of different claims on different grounds. Defendants are also free to oppose class certification on whatever grounds they see fit and make different arguments regarding the different proposed classes. Defendants' assertion that "a combined response to the three complaints would be lengthy, convoluted, and defy efficient response or resolution" thus misses the mark. Defs.' Br. 8. Litigants and courts deal with such situations routinely.

Here, in fact, Plaintiffs originally—and appropriately—brought all their claims in a single action. If not for the preferences of a single judge, the claims would have remained in one case and Defendants would have had to address all of Plaintiffs' claims in a single action. Consolidation will simply return the parties to something akin to the original, more efficient state of affairs—while also giving Defendants the potential advantage of being able to appeal an adverse judgment on some claims without waiting for the final resolution of the others. *See Hall v. Hall*, 584 U.S. 59, 72 (2018).[2]

---

[2] Defendants' contention that Judge Savage did not appreciate the differences among the three cases when he proposed that they be consolidated is not credible. *See* Defs.' Br. 16 n.6. When Plaintiffs divided the original *Hammond* action into the three actions now pending before this Court, no new claims or proposed classes were

**B.     Defendants misunderstand the law and facts underpinning Plaintiffs' claims.**

Defendants' assertion that "stark differences" among the three cases "render consolidation inappropriate," Defs.' Br. 5, rests on a misunderstanding of the law and facts underpinning Plaintiffs' claims.

First, Defendants are wrong that the detrimental impact of solitary confinement is not at issue in the due-process claim asserted in *Walker*. *See* Defs.' Br. 6. To prove they have a liberty interest protected by the Due Process Clause, Plaintiffs will have to demonstrate that their solitary confinement "imposes atypical and significant hardship on [them] in relation to the ordinary incidents of prison life." *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 559 (3d Cir. 2017). It is the "conditions themselves" that will "determine whether a liberty interest is implicated." *Id.* at 566. The court will have to consider the overall conditions and their effects on the Plaintiffs, including the amount and quality of out-of-cell time, the lack of social interaction, the unavailability of programming, and whether the duration of the conditions is indefinite. *See Wilkinson v. Austin*, 545 U.S. 209, 223–24 (2005); *Williams*, 848 F.3d at 562–64. Crucially, as is true for Plaintiffs' Eighth Amendment and ADA claims,[3] the court will have to consider the effects of these

---

added. The claims, factual allegations, and proposed classes before Judge Savage at the time are thus the same as those now before this Court.

[3] *See* Pls.' Br. 7.

conditions on Plaintiffs' psychological well-being. *See id.* at 563 (holding that Plaintiffs had a liberty interest because "[n]umerous studies on the impact of solitary confinement show that these conditions are extremely hazardous to well-being"); *see also id.* at 566–69 (discussing, in the context of a due-process claim, the "scientific consensus" regarding the deleterious effects of solitary confinement). Thus, the conditions in the DOC's solitary-confinement units and their effects on Plaintiffs and class members are at issue in all three cases.

Second, Defendants' argument about the differences between the Eighth Amendment claims in *Hammond* and *Henderson* misconstrues Plaintiffs' claims. Defendants are correct that the claim in *Hammond* focuses on the risks and harms of solitary confinement to individuals with preexisting mental illness and that the claim in *Henderson* focuses on the risks and harms of *prolonged* solitary confinement irrespective of preexisting mental illness. But Defendants' contention that this means Plaintiffs' and class members' mental health records will only be relevant in *Hammond*, and not in *Henderson*, is baseless. *See* Defs.' Br. 6–7. Defendants go so far as to state that the Eighth Amendment claim in *Henderson* "does not include a mental health component." *Id.* at 7. But this is belied by the numerous allegations in the *Henderson* complaint about the deleterious effects of prolonged solitary confinement on mental health. *See, e.g.*, Compl. ¶¶ 27–38, 53–60, 387–88, No. 25-49, ECF No. 1.

8

Plaintiffs' claim in *Henderson* is analogous to the Eighth Amendment claim in *Porter v. Pa. Dep't of Corr.*, where the plaintiff, who did not allege preexisting mental illness, challenged his prolonged solitary confinement. 974 F.3d 431, 435, 450 (3d Cir. 2020). Despite the plaintiff not premising his claim on preexisting mental illness, the harmful psychological effects of prolonged solitary confinement were obviously relevant—indeed, essential—to his claim. *See id.* at 443 (stating that the plaintiff provided "competent evidence that he has . . . experienced severe detrimental effects from his prolonged solitary confinement," including "severe anxiety, depression, panic, paranoia . . . and . . . suicidal impulses"). Discovery in both *Hammond* and *Henderson* will therefore necessarily include Plaintiffs' and class members' mental health records.

## C. The cases Defendants cite provide further support for consolidation.

The cases on which Defendants rely undercut their argument and point toward consolidation here.

In *In re Consolidated Parlodel Litigation*, the cases at issue were actually consolidated for discovery; all that was at issue was whether they should be consolidated for trial. 182 F.R.D. 441, 443 (D.N.J. 1998). Consolidation for trial is not presently under consideration, so Defendants' reliance on *In re Consolidated Parlodel* is misplaced. *See* Defs.' Br. 4, 5, 14.

9

In *Gholson v. Sheeder*, which Defendants cite for the proposition that consolidation may be inappropriate "when individual issues predominate," Defs.' Br. 4, the court actually emphasized that "[c]ommon questions of law and fact do not have to predominate. All that is required is that the district court find they exist and that consolidation will prove beneficial." No. 18-1280, 2019 U.S. Dist. LEXIS 186718, at *6 (W.D. Pa. Oct. 29, 2019) (quoting 8 MOORE'S FEDERAL PRACTICE—CIVIL § 42.10[1][a], Lexis (database updated Sept. 2019)). The court went on to consolidate the cases for pretrial and discovery purposes because, among other things, none of the parties would be prejudiced, the incidents involved overlapping time periods, the cases shared some defendants in common, and the majority of the defendants were represented by the same counsel. *Id.* at *7–8. All these factors are present here as well.[4]

In *Meeder v. Superior Tube Co.*, unlike here, the plaintiffs in the three cases were different, 72 F.R.D. 633, 634 (W.D. Pa. 1976), they were represented by different counsel, *id.* at 636, and they disagreed among themselves as to whether the cases should be consolidated, *id.* at 635. The plaintiffs in one case wanted the other two cases stayed while their case proceed with discovery. *Id.* The plaintiffs in the

---

[4] Despite some differences in the attorneys representing Defendants in each case, there is also substantial overlap. Attorneys Defelice and Mazeski represent all the Defendants in all three cases, and Attorneys Bedell and Kaplan represent all the Defendants in two of them.

other two cases wanted all three cases consolidated and lead counsel to be designated. *Id.* Given the lack of alignment among the plaintiffs, the court acknowledged the need to "permit each attorney to control the destiny of his own client's case at this time." *Id.* at 636. Even so, recognizing the "duplication and unnecessary inconvenience to the parties and witnesses" that would result if the cases remained completely separate, the court ordered "coordinated discovery." *Id.* at 637. Here, where the plaintiffs in the three matters are largely the same and are represented by the same counsel, consolidation for discovery and pretrial purposes is the best approach.

Finally, *Snider v. Pa. Dep't of Corrections* and *Liqui-Box Corp. v. Reid Valve Co.* are both easily distinguishable. In *Snider*, consolidation was obviously inappropriate because one case involved events in a county jail and the other in DOC prisons several years later. No. 15-951, 2019 U.S. Dist. LEXIS 169465, at *26–27 (M.D. Pa. Sept. 30, 2019); *see* Defs.' Br. 4–5. Likewise, in *Liqui-Box Corp.*, the two cases arose out of completely different factual scenarios—patents for two distinct products. No. 85-2355, 1989 U.S. Dist. LEXIS 17189, at *1 (W.D. Pa. Sep. 15, 1989). As the court explained, "[a]side from the similarity that both pending actions are design patent cases, there are no apparent common issues of fact and little, if any, duplication of evidence with respect to the two cases." *Id.* at *2. Moreover, the two cases at issue were "at greatly disparate points of preparation, the first case having

11

been ready for trial for three years, while the later case [wa]s still in discovery." *Id.* at 1–2; *see* Defs.' Br. 14. Here, in contrast, as Plaintiffs have explained, there will be considerable overlap in the evidence among the three cases, and they are at the same procedural stage.

### D. Now is the ideal time to consolidate the cases.

Defendants' assertion that, if consolidated discovery is going to occur, it should wait until after class certification is resolved ignores the realities of class-action litigation. *See* Defs.' Br. 16. Substantial discovery is often required *before* class certification is considered by the court. *See, e.g.*, *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 367 (3d Cir. 2015); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 319–20 & n.20 (3d Cir. 2008). Since consolidation here will make discovery, in particular, more efficient, delaying consolidation until after the court rules on Plaintiffs' class certification motions makes no sense. *See* Pls.' Br. 6–8.

Nor is there any need to delay a decision on consolidation until after any motions to dismiss are resolved. Consolidating the cases now would merely create a single deadline and require Defendants to make all their arguments for dismissal in a single brief, which would avoid the inevitable duplication that would occur if three separate briefs were filed. Despite Defendants' stated desire to make different arguments for dismissal in the three different cases, separate briefs in each case

12

would still involve redundancies, as legal standards, overlapping factual allegations, and more would likely be repeated in each brief. This would unnecessarily burden the parties and the Court.[5]

## CONCLUSION

For the reasons stated here, as well as those in Plaintiffs' initial brief, the *Hammond*, *Henderson*, and *Walker* actions should be consolidated for discovery and all pretrial purposes.

---

[5] It is unclear why Defendants have wasted space addressing the possibility of one case being "designated as a lead case while the other two remained dormant." Defs.' Br. 7–8. Defendants rightly reject this approach as inappropriate for these cases. When Plaintiffs' counsel first raised the possibility of consolidation after the cases were transferred, Defendants' counsel asked whether this approach was what Plaintiffs envisioned. In an email dated January 14, 2025, Plaintiffs' counsel stated clearly that they would oppose any of the cases being stayed and that they were proposing that all three cases proceed, with common pretrial deadlines and a consolidated discovery process.

Respectfully submitted,

/s/ Matthew A. Feldman
Matthew A. Feldman (PA 326273)
PA INSTITUTIONAL LAW
    PROJECT
718 Arch St., Suite 304S
Philadelphia, PA 19106
215-925-2966
mfeldman@pilp.org

Bret Grote (PA 317273)
Jaclyn Kurin (D.C. ID No. 1600719)
Dolly Prabhu (PA 328999)
ABOLITIONIST LAW CENTER
PO Box 16537
Philadelphia, PA 19122
(412) 654-9070
bretgrote@abolitionistlawcenter.org
jkurin@alcenter.org
dolly@alcenter.org

Will W. Sachse (PA 84097)
Noah S. Becker (PA 327752)
Stormie Mauck (PA 328048)
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
215-994-2496
will.sachse@dechert.com
noah.becker@dechert.com
stormie.mauck@dechert.com

Alexandra Morgan-Kurtz (PA 312631)
PA INSTITUTIONAL LAW
    PROJECT
247 Fort Pitt Blvd, 4th Fl.
Pittsburgh, PA 15222
412.434.6004
amorgan-kurtz@pilp.org

DATED: March 20, 2025